UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

PAIGE E. LESHER,                             :
        Plaintiff,                          :
                       :
    v.                                   :        No. 5:17-cv-04731
                       :
CLARK ZIMMERMAN,                             :
*IN HIS INDIVIDUAL CAPACITY*; and           :
HAMBURG AREA SCHOOL DISTRICT,                :
        Defendants                         :

_____

**O P I N I O N**
**Defendant Clark Zimmerman's Motion to Dismiss, ECF No. 10 – Granted in Part**
**Defendant Hamburg Area School District's Motion to Dismiss, ECF No. 12 – Granted in Part**


**Joseph F. Leeson, Jr.**                                          **May 15, 2018**
**United States District Judge**


## I.        INTRODUCTION

Plaintiff Paige E. Lesher initiated this action pursuant to 42 U.S.C. § 1983 against

Defendants Clark Zimmerman, a teacher and coach at Hamburg Area High School, and the

Hamburg Area School District, after Lesher was injured by a ball hit by Zimmerman during

softball practice.  *See* Compl., ECF No. 1.  Lesher alleges a state-created danger claim against

each Defendant deriving from the Fourteenth Amendment Due Process Clause.  *Id.*  Defendants

have each filed a Motion to Dismiss.  *See* Mots. Dismiss, ECF Nos. 10, 12.  For the reasons set

forth below, this Court concludes that Lesher fails to state a constitutional claim against either

Zimmerman or the School District.  The Motions to Dismiss are granted, except to the extent that

they seek to strike certain paragraphs, as those requests are denied as moot, and the Complaint is

dismissed.

## II. Background

The Complaint alleges as follows. In April 2016, Lesher was a high-school senior and pitcher on the Girls' Varsity Softball Team at the Hamburg Area High School. Compl. ¶ 31. On April 24, 2016, while at softball practice at the High School, she was warming up from the pitcher's mound by throwing to the catcher. *Id.* ¶¶ 32, 36. At the same time, the team's coach, Zimmerman, was conducting infield practice by independently hitting ground balls to infielders. *Id.* ¶ 36. Zimmerman approached the batter's box and instructed Lesher to pitch to him. *Id.* ¶ 37. Lesher assumed Zimmerman, who had never batted in this situation before, intended to continue infield practice. *Id.* ¶¶ 38, 42. Zimmerman did not warn her that he intended to hit away and at full-swing, nor did he have her stand behind a pitching screen. *Id.* ¶¶ 37, 42. Zimmerman hit a line drive directly at her, she was unable to react in time, and the ball struck her in the face. *Id.* ¶ 45. Lesher collapsed and suffered severe injuries, including a fractured jaw and the loss of four teeth, requiring at least eight surgical procedures and three root canals, as well as additional dental treatment. *Id.* ¶ 48. Although mouth guards had been purchased for the team, Zimmerman never distributed them. *Id.* ¶¶ 24, 81.

Lesher asserts that Defendants were each responsible for protecting her bodily integrity and for not depriving her of that right. Compl. ¶ 54. She alleges that Defendants knew, or should have known, that injuries could occur by permitting a grown male to swing away at pitches from student athletes. *Id.* ¶ 55. Lesher argues Zimmerman acted with deliberate indifference and willful disregard for her safety by hitting a ball at full strength in her direction and in failing to require her use of a mouth guard and a pitching screen. *Id.* ¶ 71. She alleges that Defendants knew, or should have known, that mouth guards, pitching screens, and other appropriate safety equipment were available, but the School District did not have a proper policy,

practice, or custom in place to train and/or supervise coaches on the proper use of safety equipment. *Id.* ¶¶ 24, 43, 57-58.

The Complaint further alleges that in the years prior to the incident, Zimmerman had displayed over-aggressiveness and had been verbally abusive and harassing to female students. Compl. ¶¶ 17-19 (citing to a comment Zimmerman allegedly made to his civics class). Lesher alleges that in the months just prior to the incident, several team members were injured at practice when Zimmerman utilized a pitching machine at high velocity inside the school's gymnasium, and that Zimmerman had batted a ball directly at a team member, almost striking her in the head, to get her attention. *Id.* ¶¶ 22-23. Lesher alleges that complaints made to assistant coaches were passed on to the Athletic Director of the School District, a policy-making authority, but that the School District failed to take appropriate disciplinary action and failed to provide adequate training to Zimmerman. *Id.* ¶¶ 25- 27. She alleges that the School District's failure to address Zimmerman's conduct rose to the level of a custom or a de facto policy to disregard the safety of the softball team members. *Id.* ¶ 28. Lesher alleges the School District demonstrated deliberate indifference in failing to train and discipline Zimmerman when he engaged in unsafe coaching practices. *Id.* ¶ 63.

Lesher further contends that the School District created and/or permitted a "win at all costs" sports culture or custom. *Id.* ¶ 77. To support her theory that the School District had a policy of disregarding safety and encouraging aggressiveness, Lesher refers to prior incidents that the School District was allegedly aware of and took no corrective action against: (1) in the 2008-2009 school year the basketball coach allegedly placed trash cans in the gym to collect the vomit of student athletes because of the intense work-out sessions; (2) in the fall of 2013, several weeks after a student was suspended for yanking the helmet off a teammate during a football

game, the same student allegedly assaulted a teammate during football practice at the urging of the football coach; and (3) in the fall of 2015, the girls field hockey coach was verbally abusive and warmed up the goalie by personally taking shots at the student with such force that they caused bruises. *Id.* ¶ 78. Lesher alleges that the School District had knowledge of, and acquiesced in and/or ratified, the custom and practice of allowing unsafe practices. *Id.* ¶ 62.

## III.  STANDARDS OF REVIEW

### A.  Motion to Dismiss- Rule 12(b)(6)

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

**B.      Motion to Strike- Rule 12(f)**

A court may strike "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored and are considered a "drastic remedy to be resorted to only when required for the purposes of justice." *DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007) (quoting N. *Penn Transfer, Inc. v. Victaulic Co. of Am.*, 859 F. Supp. 154, 158 (E.D. Pa. 1994)). Thus, the moving party generally must demonstrate that the material "has no possible relation to the controversy and may cause prejudice to one of the parties." *Id.* at 428-29 (quoting *River Rd. Dev. Corp. v. Carlson Corp.-Ne.*, No. 89-7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990)). "Even where the challenged material is redundant, immaterial, impertinent, or scandalous, a motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party." *Pennington v. Wells Fargo Bank, N.A.*, 947 F. Supp. 2d 529, 534 (E.D. Pa. 2013) (quoting *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 868 F. Supp. 2d 376, 379 (D. Del. 2012)).

## IV.      ANALYSIS

Defendants' two Motions to Dismiss are the subject of this Opinion.

In the first Motion, Zimmerman asserts that he is entitled to qualified immunity because there is no clearly established constitutional right to protection in the context of school athletic activities in the absence of allegations of intentional and egregious misconduct, neither of which were pled in the Complaint. Zimmerman's Mot. Dismiss, ECF No. 10 ("Z. Mot."). He also moves to strike paragraphs 18 to 24 and 32 to 34 from the Complaint as immaterial and prejudicial.

In the second Motion to Dismiss, the School District argues that Lesher fails to state a constitutional claim for violation of her right to bodily integrity because there are no allegations

of intentional misconduct. School District's Mot. Dismiss, ECF No. 12 ("SD Mot.").

Additionally, the School District moves to strike paragraphs 12 to 21 and 78(a)-(f) from the

Complaint as immaterial, impertinent, and scandalous in the context of a *Monell*[1] claim.

For the reasons discussed herein, this Court concludes that Lesher has failed to state a

constitutional claim against either Zimmerman or the School District. Her injury was serious

and is regrettable, but it does not rise to the level of a constitutional violation simply because it

was caused by a state actor. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998)

(holding that "the due process guarantee does not entail a body of constitutional law imposing

liability whenever someone cloaked with state authority causes harm"); *Spady v. Bethlehem Area*

*Sch. Dist.*, 800 F.3d 633, 641 (3d Cir. 2015) (commenting about the "typical risks that are

associated with participation in athletic activities" and finding that "even the minimal type of

intentional physical contact[], while deplorable, will rarely make out a constitutional violation"),

*cert. denied Spady v. Rodgers*, 136 S. Ct. 1162 (2016). The claims are dismissed for the reasons

discussed more fully below and the requests to strike certain paragraphs from the Complaint are

denied as moot.

A.      **Intentional and egregious misconduct is not required for Lesher to plead a**
        **state-created danger claim deriving from the Fourteenth Amendment's Due**
        **Process Clause.**

Both Motions to Dismiss suggest[2] that Lesher does not have a constitutional claim absent

intentional[3] and egregious misconduct. This is incorrect.

---

[1]      *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (holding that a local government
may be sued "when execution of a government's policy or custom, whether made by its
lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts
the injury that the government as an entity is responsible under § 1983").

[2]      The School District argues that Lesher must allege intentional conduct to state a
constitutional claim. *See* SD Mot. ¶¶ 33-34. Zimmerman's assertions, on the other hand, are in

To assert a state-created danger claim under the Fourteenth Amendment Due Process Clause, a plaintiff must plead:

> (1) the harm ultimately caused [by the state actor's conduct] was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 170-71 (3d Cir. 2017) (quoting *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006)).  Under the second element, "'[t]he exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case.'"  *Mann*, 872 F.3d at 171 (quoting *Estate of Smith v. Marasco*, 430 F.3d 140, 153 (3d Cir. 2005)).  "If the circumstances are highly pressurized, it is necessary to show intentional harm by the state actor; however, if the state actor has the benefit of deliberation, then all the plaintiff needs to show is deliberate indifference."  *Id.*  In circumstances falling somewhere in between, "the relevant inquiry is whether the state actor 'consciously disregarded a great risk of harm,' with the possibility that 'actual knowledge of the risk may not be necessary where the risk is 'obvious.''"  *Mann*, 872 F.3d at 171 (citing *Sanford v. Stiles*, 456 F.3d 298, 310 (3d Cir. 2006) ("The level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases. In a 'hyperpressurized environment,' an intent to cause harm is usually required. On the other hand, in cases where

---

the context of a qualified immunity defense: that there is no clearly established constitutional right absent intentional misconduct.  *See* Z. Mot. ¶¶ 22-27.

[3]    Intentional in this context refers to Zimmerman's intent to cause harm, not to the fact that he intentionally hit a ball pitched to him.

deliberation is possible and officials have the time to make 'unhurried judgments,' deliberate indifference is sufficient.")).

This Court finds that under the facts alleged in the Complaint, Zimmerman's alleged decision to have Lesher pitch to him during practice was not made under highly pressurized circumstances. Rather, Zimmerman had time to make an unhurried judgment and, as such, the deliberate indifference standard applies to his conduct. This conclusion is consistent with the Third Circuit Court of Appeals' decision in *Mann*.

In *Mann*, the court considered a claim against a high-school football coach for allegedly violating a student's constitutional right to bodily integrity under a state-created danger theory of liability where the coach allowed the student to continue football practice after sustaining a hard hit[4] to his upper body, without having him seen by a trainer. *See Mann*, 872 F.3d at 169-71. In addressing the second element of a state-created danger claim, the court concluded that under the facts before it, "there was no indication that this was a highly pressurized environment for which a showing of intent to harm would be necessary. Instead, the Manns only needed to show deliberate indifference[5] to the safety of a player in the circumstances presented [] to satisfy the conscience-shocking element of their claim." *Id.* at 171.

Despite this clear authority, Defendants assert that the deliberate indifference standard does not apply. They rely primarily on the Third Circuit Court of Appeals' decision in *Spady*[6] and a subsequent opinion of the United States District Court for the Western District of

---

[4]    Teammates testified that it was one of the hardest hits they had seen and that the plaintiff was dizzy and stumbling around on the field. *See Mann*, 872 F.3d at 169. It was only after a second hit that the student was removed from the practice field. *Id.*

[5]    Deliberate indifference has been defined "as requiring a conscious disregard of a substantial risk of serious harm." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 246 (3d Cir. 2016) (concluding that deliberate indifference "might exist without actual knowledge of a risk of harm when the risk is so obvious that it should be known" (internal quotations omitted)).

[6]    *Spady*, 800 F.3d 633.

Pennsylvania.[7]  However, these cases, both decided before the court's opinion in *Mann*, are

distinguishable.

In *Spady*, a fifteen-year-old high school student died of "dry drowning" shortly after his

participation in a mandatory swimming class run by his physical education teacher.  *See Spady*,

800 F.3d at 635.  Spady's mother filed a civil-rights action under 42 U.S.C. § 1983, claiming a

Fourteenth Amendment due-process violation premised on the state-created-danger theory of

liability.[8]  *Id.* at 636.  The district court denied the teacher's summary judgment motion, filed on

the basis of qualified immunity, but the Circuit court reversed on appeal.  *Id.*  The Circuit court

determined that the teacher was entitled to qualified immunity because the constitutional right

was not clearly established, without considering whether the plaintiff sufficiently pled a violation

of a constitutional right.  *Id.* at 637-38 (stating, we "will address the second prong of the

qualified immunity analysis at the outset").  The court determined that the "case law simply did

not inform a reasonable gym teacher that the failure to asses[s] a student who briefly goes under

water for the possibility of dry drowning violated that student's constitutional right to bodily

integrity free from unwarranted intrusions by the state."  *Spady*, 800 F.3d at 640.  The court

concluded that there were no Supreme Court cases discussing the right of students to adequate

safety protocols in such settings and that the decisions in *Kneipp*[9] and *Sciotto*,[10] the only cases

---

[7]     *See Dorley v. S. Fayette Twp. Sch. Dist.*, No. 2:15-cv-00214, 2016 U.S. Dist. LEXIS 71180, at *1 (W.D. Pa. June 1, 2016).

[8]     The court held that the "specific constitutional right under the Due Process Clause in this context is the right to affirmative intervention by the state actor to minimize the risk of secondary or dry drowning."  *Spady*, 800 F.3d at 638.   "[F]or qualified immunity purposes, the question [before the court was] whether the law in this context was so well-established that it would have been apparent to a reasonable gym teacher that failure to take action to assess a non-apparent condition that placed the student in mortal danger violated that student's constitutional right under the state-created-danger theory of liability."  *Id.* at 638-39.

[9]     The *Spady* court found that the facts of *Kneipp*, which addressed law enforcement's encounter with an intoxicated couple, were "not even remotely close to the facts presented" by

cited by the plaintiff, did not support a finding that the right was clearly established. *Id.* at 639-40. In determining that the right was not clearly established, the court further explained that the "courts that have found colorable constitutional violations in school-athletic settings did so where state actors engaged in patently egregious and intentional misconduct, which is notably absent from this case." *Id.* at 641.

The court in *Dorley* similarly based its determination, at least with respect to the individual defendants,[11] on the fact that the constitutional right was not clearly established. *See Dorley*, 2016 U.S. Dist. LEXIS 71180, at *8-19. Accordingly, neither court's reference to egregious and intentional misconduct was made with respect to the second element of a state-created danger claim. Reading *Spady* in the proper context dispels any idea that the court

Spady. *See Spady*, 800 F.3d at 639 (citing *Kneipp by Cusack v. Tedder*, 95 F.3d 1199, 1201 (3d Cir. 1996) (holding that a constitutional claim was alleged where police officers separated a visibly intoxicated female from her traveling companion and forced her to walk home alone, increasing her risk that she would fall and get injured)).
[10] The *Spady* court found "Spady's reliance on *Sciotto* equally unavailing," even though the *Sciotto* court addressed a substantive due process claim in the school-sports context. *See Spady*, 800 F.3d at 640. In *Sciotto*, the district court denied qualified immunity to a high school wrestling coach who had a 16-year-old, 110-pound sophomore wrestle against a 22-year-old, 150-pound former member of a Division I wrestling team, finding "that the 'contours' of the constitutional right to freedom from school officials' deliberate indifference to, or acts that increase the risk of serious injury from unjustified invasions of bodily integrity perpetrated by third parties were clearly established at the time of the injury to" the plaintiff. *See Sciotto ex rel. Sciotto v. Marple Newtown Sch. Dist.*, 81 F. Supp. 2d 559, 572 (E.D. Pa. 1999) (denying the defendants' summary judgment motion, which was based on qualified immunity). The Third Circuit Court of Appeals in *Spady* rejected the *Sciotto* court's reliance on a corporal punishment case and sexual molestation case to deny qualified immunity, stating that equating these cases "with a student-athlete's unfortunate accident during wrestling practice or a rare instance of delayed drowning after swim class is a bridge too far." *Spady*, 800 F.3d at 641 (citing *Ingraham v. Wright*, 430 U.S. 651 (1977) and *Stoneking v. Bradford Area School District*, 882 F.2d 720 (3d Cir. 1989)).
[11] In addressing the School District's liability, the *Dorley* court decided that the claim failed, not based on whether the state actor's conduct was intentional or deliberately indifferent, but because of the absence of factual allegations showing that the School District had made an affirmative proclamation of a policy or acquiesced in a well-settled custom. *See Dorley*, 2016 U.S. Dist. LEXIS 71180, at *21-27.

changed the landscape in the school-sports context by requiring intentional misconduct to state a constitutional violation, and Defendants' reliance on *Dorley* to support such an idea is misplaced. The *Dorley* court, like *Spady*, was considering whether a constitutional right ("not to be subjected to football blocking drills against upperclassmen that were twice [the student's] size when he was suspecting the drills to be non-contact") was clearly established. *See Dorley*, 2016 U.S. Dist. LEXIS 71180, at *17. In referencing *Spady* as a "game-changer," the *Dorley* court did not find that *Spady* had changed the required showing to state a constitutional claim in the school-sports context; rather, the court believed that *Spady* lessened "the very wide berth" previously afforded by the qualified immunity doctrine to would-be constitutional tortfeasors. *See id.* at *15-19 and n.8 (citing *Mullenix v. Luna*, 136 S. Ct. 305, 307 (2015)).

Thus, contrary to Defendants' suggestion, *Spady* did not hold that egregious and intentional misconduct is required to state a constitutional claim; rather, the court concluded only that the right to bodily integrity free from unwarranted (but not intentional and egregious) intrusions by the state in the school-athletic setting was not clearly established. Accordingly, in order to satisfy the second element of a state-created danger claim, Lesher must show deliberate indifference. *See Mann*, 872 F.3d at 171.

**B. Lesher fails to allege sufficient facts to show that Zimmerman's conduct violated her constitutional rights.**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A court must consider whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201

(2001), *overruled on other grounds* by *Pearson*, 555 U.S. 223. If so, was that right clearly established? Although at the summary judgment stage a court may begin its consideration with either question, *see Pearson*, 555 U.S. at 236, because qualified immunity is an affirmative defense, it will only be upheld on a 12(b)(6) motion to dismiss "when the immunity is established on the face of the complaint," *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001). Accordingly, this Court addresses the first question: do the facts alleged in the Complaint show that Zimmerman's conduct violated a constitutional right?

As discussed above, the elements of a state-created danger claim in the due process context, which a plaintiff must plead, are:

> (1) the harm ultimately caused [by the state actor's conduct] was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Mann*, 872 F.3d at 170-71 (quoting *Bright*, 443 F.3d at 281). To adequately plead foreseeability under the first element, a plaintiff must "allege an awareness on the part of the state actors that rises to [the] level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 238 (3d Cir. 2008). "Once the foreseeability element of the state-created danger test has been determined, the complaint must also allege that the attack or harm is a 'fairly direct' result of the defendant's acts." *Id.* at 239.

Lesher argues that it was foreseeable that as a softball pitcher, standing on a mound that is closer to the batter's box than on a baseball field, she might not be able to react in time to

catch a line drive hit directly at her by Zimmerman, an adult male in good athletic condition. She relies primarily on the distance between the pitcher's mound and batter's box, and on the size and strength of Zimmerman. She cites no case law to support her argument. More importantly, the Complaint does not allege that any injuries occurred in prior practices under similar circumstances, either with Zimmerman batting or because the pitcher was not using a pitcher's screen.[12] In the absence of such allegations, this Court finds that Lesher has failed to show that Zimmerman had either notice or actual knowledge of the risk of harm. *Compare Hall v. Martin*, No. 17-523, 2017 U.S. Dist. LEXIS 121099, at *2 (W.D. Pa. 2017) (determining that because "there were numerous occasions where students were injured after being hit by a floor hockey puck in [the gym teacher's] class," of which the teacher was aware "but continued to instruct students to play floor hockey," the risk that a student playing goalie without any facial protective equipment of being hit in the eye with a hockey puck was foreseeable) and *Sciotto*, 81 F. Supp. 2d at 570 (concluding that on the basis of expert observations, a prior injury under similar circumstances, parental complaints about the safety of inviting older, heavier, more experienced alumni wrestlers to practice and allowing them to "live wrestle" younger, lighter, less experienced wrestlers, and of the rules governing high school athletics, there was a

---

[12]    Lesher's reference to an incident in 2016 when several students were injured because Zimmerman utilized a pitching machine indoors is not sufficient to establish notice because the circumstances were significantly different. Lesher alleges that in the prior incident, "balls were fired with such high velocity that several team members were injured when they were struck by the balls because the balls bounced higher on the gym floor surface that on infield dirt to which the team members were accustomed and because the team members were unable to react in time to the high speed of the ground balls." Compl. ¶ 22. By contrast, the alleged injury to Lesher at issue in this case occurred on a softball field, where team members were accustomed to playing, and did not involve the use of a high velocity pitching machine. There is no suggestion that a pitcher's screen might have prevented the injuries in the prior incident.

Lesher's allegations that Zimmerman was aggressive, had previously made misogynic remarks, and had almost struck a student by batting a ball directly at her to get her attention also do not show that Lesher's injury was foreseeable under the alleged facts of the instant action.

foreseeable risk of injury to a younger wrestler such as the plaintiff, a high school sophomore), *with Dorley v. S. Fayette Twp. Sch. Dist.*, 129 F. Supp. 3d 220, 234-36, 238-39 (W.D. Pa. 2015) (concluding that the allegations in the complaint were deficient as to the first element of a state-created danger claim because although the high school football coaches allegedly created an atmosphere that encouraged violence and set up a blocking drill, without pads, that pitted aggressive upperclassmen against inexperienced underclassmen, there were no allegations that any injuries occurred in prior drills to put the coaches "on some plausible notice of the concrete risk of a sufficiently serious injury"). Consequently, Lesher has failed to plead the first element of a state-created danger claim.

Because Lesher has failed to allege facts to establish the first element, she has also necessarily failed to show that Zimmerman was deliberately indifferent, as required by the second element of the state-created danger test. "[T]he notion of deliberate indifference contemplates a danger that must at least be foreseeable," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 910 (3d Cir. 1997), and where the alleged facts do not show a foreseeable risk, a court "cannot say as a matter of law that the facts pled 'evince a willingness to ignore a foreseeable danger or risk,'" *Dorley*, 129 F. Supp. 3d at 235-36 (quoting *id.*).

Moreover, even if this Court assumes that the harm was foreseeable, Lesher has nevertheless failed to show that Zimmerman consciously disregarded a substantial risk of serious harm by swinging away at a ball pitched to him by a high-school senior on the varsity softball team without requiring her to stand behind a pitcher's screen. Lesher argues that "Zimmerman, as an experienced coach, surely knew of the risk of harm to a pitcher when confronted with a line drive hit directly at her [and i]t is precisely this risk which pitching screens are designed to protect against." Opp. Z. Mot. 14, ECF No. 14. However, the "mere possibility that an injury

may result from an activity does not mean that there is a 'substantial risk' of that injury occurring." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 257 (3d Cir. 2010). "Life is fraught with risk of serious harm and the sports world is no exception." *Id.* at 258 (concluding that the record was "devoid of evidence from which a reasonable jury could conclude that serious injury is a common or likely occurrence in tackle football games"). *See also Lones v. Detroit, T. & I. R. Co.*, 398 F.2d 914, 925 (6th Cir. 1968) (stating that "[i]f a child is able to play baseball capably, he must know that there is danger of being hit with ball or bat"). Considering the typical risks associated with playing softball, this Court rejects Lesher's contention that Zimmerman's conduct, while unfortunately causing her serious injury, was so inherently dangerous to demonstrate deliberate indifference. *See Spady*, 800 F.3d at 641 (3d Cir. 2015) (holding that even intentional physical contact in the school-athletic setting "will rarely make out a constitutional violation"). As discussed above, Lesher does not allege that Zimmerman previously injured a student while batting at softball practice, nor does she allege any prior incidents with similar circumstances that show Zimmerman "consciously disregarded a substantial risk of serious harm" to Lesher. *See Dorley*, 129 F. Supp. 3d at 235-36 (concluding that it "cannot be plausibly said that the coaches were otherwise on notice that this specific drill, at this football camp, was so inherently dangerous that they were deliberately indifferent to a risk of serious harm, previous injury or not"). Consequently, having accepted the facts as true and drawn all reasonable inferences in the light most favorable to Lesher, this Court concludes Lesher has failed to show that Zimmerman was deliberately indifferent, as required by the second element of her state-created danger claim.[13]

---

[13]     The third and fourth elements have been met. *See Mann*, 872 F.3d at 172 (holding that the "bar for proving [the third] element is not terribly high, as we have previously held that a relationship can exist where a plaintiff is a member of a group that is subject to potential harm

Zimmerman's conduct did not violate a constitutional right and he is therefore dismissed pursuant to the qualified immunity doctrine.

### C. Lesher has failed to allege sufficient facts to support a *Monell* claim against the School District.

Although "it is possible for a municipality to be held independently liable for a substantive due process violation even when none of its individual employees is liable, . . . in order for municipal liability to exist, there must still be a violation of the plaintiff's constitutional rights." *Sanford*, 456 F.3d at 314. Further, "a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694-95). "[T]here are two ways that a plaintiff can establish municipal liability under § 1983: policy or custom." *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. To hold a municipality liable, its policy or custom must have been "the 'moving force' behind a constitutional violation." *Sanford*, 456 F.3d at 314 (quoting *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 400 (1997)). *See also Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (holding that where the policy or custom is based on the

---

brought about by the state's actions;" and finding that "a student-athlete stands in such a relationship with the coaching staff"); *B.D. v. Downingtown Area Sch. Dist.*, No. 15-6375, 2016 U.S. Dist. LEXIS 80317, at *13-16 (E.D. Pa. June 20, 2016) (holding that the "fourth element requires a showing that a defendant's act was a 'but-for' cause of the plaintiff's injury," and finding that "[w]hile many of the allegations relating to the Defendants' failure to provide proper safety equipment do not satisfy the requirement of an affirmative act, the Coaches' design of the course and alleged instruction to the runners to run in such a fashion satisfies the fourth element in this case").

municipality's failure to train, the deficiency in the training program must have actually caused the constitutional violation).

"A municipal policy, for purposes of Section 1983, is a statement, ordinance, regulation, or decision officially adopted and promulgated by a government body's officers." *Torres v. City of Allentown*, No. 07-1934, 2008 U.S. Dist. LEXIS 50522, at *10-11 (E.D. Pa. June 30, 2008) (citing *Monell*, 436 U.S. at 690). A custom, although not authorized by written law, has the force of law because it is such a permanent and well-settled practice. *Monell*, 436 U.S. at 690. A "custom may be established by proving knowledge of, and acquiescence to, a practice." *Watson*, 478 F.3d at 156. "In either instance, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

Failing to train municipal employees can also be a source of liability, but "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton*, 489 U.S. at 388, 390. *See also Kneipp*, 95 F.3d at 1212. A three-part test has been formulated to determine whether a municipality's failure to train or supervise amounts to deliberate indifference. *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999). "[I]t must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id*.

Initially, this Court finds that there was no violation of Lesher's constitutional rights. As mentioned previously, while Lesher's injury is regrettable, it does not rise to the level of a

constitutional violation simply because it was caused by a state actor. *See Lewis*, 523 U.S. at 848; *Spady*, 800 F.3d at 641. On this basis alone, the School District should be dismissed. Nevertheless, this Court will conduct the *Monell* analysis.

Lesher does not allege that the School District issued any official "statement, ordinance, regulation, or decision;" rather, her claim is based on an alleged custom and on a failure to train theory. To establish a custom, Lesher must show both knowledge and acquiescence to a well-settled practice. Although this Court is required to accept all well-pleaded factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Lesher's allegations that the School District had knowledge of the prior incidents with Zimmerman and condoned his conduct[14] are largely legal conclusions, and therefore are not entitled to a presumption of truth. *See Kingsmill v. Szewczak*, 117 F. Supp. 3d 657, 672 (E.D. Pa. 2015) (finding that the plaintiff failed to allege well-pled facts in support of his *Monell* claim with respect to a policy or custom because the plaintiff's allegation regarding a police officer's prior misconduct and the City's alleged knowledge of it was merely "a legal conclusion styled as a factual allegation"). Similarly, while the Complaint includes factual allegations to support a finding that the School District had knowledge of the 2013 incident involving the football coach, as it was allegedly publicized in a local newspaper and/or captured on a video that went viral on social media, Lesher's allegations of the School District's knowledge of the other incidents and her allegations that the School District encouraged inappropriate conduct appear to be more legal conclusions than factual allegations.

---

[14] *See, e.g.* Compl. ¶ 25 (stating that "plaintiff believes and avers" that the complaints made to the assistant coaches about Zimmerman's prior incidents "were appropriately passed on to the Athletic Director") and Compl. ¶ 27 (alleging that the School District "was aware of" Zimmerman's disregard for the safety of the members of the Girls Softball team and "failed to provide adequate training . . . thereby condoning Defendant Zimmerman's conduct").

*See, e.g.* Compl. ¶ 78 (alleging that, based on the prior incidents regarding the basketball and field hockey coaches, the School District "encourag[ed] over-aggressiveness and inappropriate conduct"). Such allegations do not support *Monell* liability. *See Snatchko v. Peters Twp.*, No. 2:12-cv-1179, 2012 U.S. Dist. LEXIS 182534, at *32 (W.D. Pa. Dec. 28, 2012) (concluding that the plaintiff's efforts to aver that the township "encouraged and tolerated the alleged practices" and "had direct knowledge that [the officer] engaged in illegal procedures" were nothing more than "a hollow attempt to couch illusory legal conclusions as facts to support some viable supervisory claim").

Moreover, Lesher has not alleged a "well-settled" custom or practice. The "mere recitation of the number of complaints filed [does not] suffice to prove a policy or custom. A plaintiff must show why those prior incidents deserved discipline and how the misconduct in those cases is similar to that involved in the present action." *Pharaoh v. Dewees*, No. 14-3116, 2016 U.S. Dist. LEXIS 59668, at *12 (E.D. Pa. May 4, 2016) (internal quotations omitted). Lesher does not show how the misconduct in the prior incidents is similar to that involved here. Rather, she relies upon dissimilar actions by three different coaches in three different sports in three different school years to claim that the School District adopted a de facto policy of ignoring and minimizing the need for safe practices. But, none of the prior incidents in the other school sports involved the coach's failure to properly use safety equipment. The prior complaints regarding Zimmerman are also unrelated to his misuse of safety equipment, and are dissimilar to the incident involved here. In fact, according to the Complaint, "Zimmerman had never batted in this situation before." Compl. ¶ 38.

For these same reasons, this Court finds that Lesher has also failed to show that the School District was deliberately indifferent in failing to train its coaches. "Failure to adequately

screen or train municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations." *See Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). The prior incidents are too dissimilar to show that the School District's alleged failure to train its coaches on the proper use of safety equipment was a "conscious" choice. *See J.H. v. City of Phila.*, No. 06-2220, 2008 U.S. Dist. LEXIS 65134, at *35-36 (E.D. Pa. Aug. 19, 2008) (holding that the plaintiff must show "more than a mere failure to act or investigate"). None of the prior incidents involving the other coaches show that the School District's alleged deficient policy caused Lesher's injury, as each of these other incidents involved intentional misconduct by the school coach: working basketball players out so intensely that they became physically sick; encouraging a football player to throw footballs at a defenseless teammate; and intentionally taking personal shots at the field-hockey goalie with such force that the shots left bruises. In contrast here, there is no suggestion that Zimmerman intended to injure Lesher when he hit the ball pitched to him. While such intentional misconduct is not required for Lesher to state a claim, it is sufficient to distinguish these prior incidents. Further, there is no mention of Zimmerman's failure to distribute mouth guards or to utilize a pitching screen in any of his prior incidents.[15] In the absence of allegations showing that the School District was aware of a pattern of similar harm, and in light of the fact that the current incident is the first time Zimmerman's alleged failure to use a pitching screen caused injury to a student athlete, this Court finds no evidence that the School District acted with deliberate indifference. *See Mann*, 872 F.3d at 175 (finding no basis to conclude that a policy or custom of the school district or its failure to train caused a violation of the student's constitutional rights

---

[15] To the extent that the need for mouth guards or pitching screens may have been obvious, the School District provided such equipment. Compl. ¶ 81. But, the need for training on the use of such equipment was not obvious and none of the prior incidents informed the School District that there was a need for such training.

because there was no evidence of a pattern of recurring injuries or of evidence that any coach deliberately exposed injured players to the continuing risk of harm that playing football poses); *Strauss v. Walsh*, Nos. 01-3625, 02-4383, 2002 U.S. Dist. LEXIS 24717, at *10-11 (E.D. Pa. Dec. 17, 2002) ("It is not sufficient merely to show that a particular [employee] acted improperly;" rather, the alleged failure to adequately supervise "must also cause the violation about which the plaintiff complains.").

The claims against the School District are dismissed for failure to state a claim.

**D.     Lesher is granted leave to file an amended complaint.**

Although this Court questions whether Lesher will be able to "allege a plausible Fourteenth Amendment claim under the state created danger theory [and to] bring any such constitutional violation outside the ambit of qualified immunity," it will nevertheless follow the pattern adopted by other courts and grant Lesher leave to file an amended complaint against both Defendants. *See R.B. v. Enterline*, No. 4:16-CV-01583, 2017 U.S. Dist. LEXIS 89998, at *28 (M.D. Pa. June 12, 2017) (allowing the plaintiff, who was allowed to continue cheerleading practice after suffering injuries during practice the previous day, to file an amended complaint even though the court was concerned that an amendment might be futile). Lesher is cautioned, however, that if she cannot allege sufficient facts to state a constitutional claim, she should refrain from filing an amended complaint.

This Court declines to reach a decision on the request to strike because the Complaint is being dismissed; but, it appears that at least some of the paragraphs may contain redundant, immaterial, impertinent, or scandalous material. If Lesher files an amended complaint, she is advised to reevaluate the challenged paragraphs before including them in an amended pleading.

## V.     CONCLUSION

There are risks associated with participation in athletic activities and high school sports are no exception.  While it is lamentable that Lesher was injured by a softball batted by her coach during practice, the mere fact that her high school coach is a state actor does not turn her injury into a constitutional violation.  Read in the light most favorable to Lesher, the Complaint does not show that either her coach or the School District were deliberately indifferent.  The Motions to Dismiss are therefore granted, except to the extent that they seek to strike certain paragraphs, as those requests are denied as moot, and the Complaint is dismissed.  Although this Court doubts that additional factual allegations will transform this unfortunate incident into a constitutional claim, it nevertheless grants Lesher leave to file an amended complaint.  She is cautioned against filing an amended complaint, however, if she cannot allege sufficient facts.

A separate order follows.


BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge